COMMONWEALTH *vs.* THOMAS J. DUNPHY.

Suffolk. February 7, 1979. — March 7, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Firearms. Practice, Criminal,* Instructions to jury. *Words,* "Property," "Residence."

There was no error in the denial of a motion that a guilty verdict be set aside and a not guilty verdict be entered on behalf of a defendant convicted of unlawfully "carrying" a firearm in violation of G. L. c. 269, § 10 (*a*), where there was evidence that in the backyard of the multiple dwelling in which the defendant lived he discharged into a windshield the weapon he was carrying, replaced it in its holster, and walked a few feet to and up the back steps of the dwelling [455-457]; and an exchange between defense counsel and a police officer during cross-examination permitted the jury to find that the defendant was in a common area at the time of the alleged offense [457-458].

The charge of the judge at the trial of a complaint for a violation of G. L. c. 269, § 10 (*a*), which occurred in the backyard of the building in which lived the defendant, who had a firearm identification permit, was inadequate on the crucial issue of whether at the time of the alleged offense the defendant was within or without the limits of his "property" or "residence," and the interests of justice entitled him to a new trial. [458-460]

COMPLAINT received and sworn to in the Municipal Court of the Dorchester District on April 19, 1977.

On appeal to the Superior Court, the case was tried before *Tamkin,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Sumner D. Goldberg* for the defendant.

*Christopher Connolly*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. After a jury trial, the defendant was convicted of unlawfully carying a firearm in violation of G. L. c. 269, § 10(*a*), and sentenced to the minimum mandatory term of imprisonment for one year. The day after sentencing, the defendant filed a motion to have his guilty verdict set aside. See G. L. c. 278, § 11.[1] The trial judge denied the motion, but stayed execution of the defendant's sentence pending appeal.

The defendant duly appealed, assigning as error the denial of the above described motion. This court transferred the case here on its own motion. G. L. c. 211A, § 10 (A). We find no error in the denial of the defendant's motion for the entry of a not guilty verdict. However, for reasons set forth in part 2 of this opinion, we think that the interests of justice entitle the defendant to a new trial.

We summarize the facts as follows. Boston police officer John H. McCartin, the only witness at trial, testified that at approximately 4:30 P.M. on April 17, 1977, he received a call to go to the rear of 82 Leonard Street in Dorchester. On arriving at 82 Leonard Street, he and his partner, Officer John Griffith, proceeded to the rear of the building, where they saw four or five youths standing in a

---

[1] It could be argued that the defendant was not entitled to be heard on this motion, as it does not appear from the record that he filed a motion for a directed verdict at the close of all the evidence. We pass over this point, however, because the Commonwealth failed to raise it, and because we conclude in any event that the defendant was not entitled to a directed verdict of not guilty.

circle about eight to ten feet from the back porch. The youths were looking at a piece of glass which was lying on the ground.

Officer McCartin asked the youths whether they had heard any gunshots. However, he did not receive any answers. The youths, with the exception of the defendant, left the premises shortly thereafter. The defendant turned and began walking up the back steps of the house. When the defendant reached the second step, Officer McCartin noticed that he was wearing a holster. Officer McCartin asked to see what was in the holster, determined that the object was a .25 caliber automatic, and asked whether the defendant had a license to carry the weapon. The defendant replied that he did, but that the license was at his mother's house, approximately seven blocks away. The defendant also stated that he was just showing his friends what bullets would do to a windshield, and gave Officer McCartin two spent rounds of ammunition.

The officers went with the defendant to his mother's house and waited outside. Approximately fifteen minutes later, the defendant emerged and admitted that he had no license to carry. He claimed, however, that he did have a firearm identification card, although he was not able to produce it at that time.[2] The officers then placed the defendant under arrest.

The parties stipulated at trial that the defendant had a firearm identification card at the time of his arrest and that the .25 caliber handgun in issue is a firearm pursuant to G. L. c. 140, § 121.

1. The sole question raised by the defendant's assignment of error is whether there was sufficient evidence of guilt to warrant submission of the case to the jury. The

---

[2] The firearm identification card is distinguishable from the license to carry, and is not an authorization to carry the weapon outside the defendant's property or residence. See G. L. c. 140, §§ 129B, 129C, 131; *Commonwealth* v. *Seay*, 376 Mass. 735, 738-740 (1978).

test is whether the evidence, considered in its light most favorable to the Commonwealth, was sufficient to permit the jury to infer the existence of the essential elements of the crime charged. *Commonwealth* v. *Seay,* 376 Mass. 735, 737 (1978). *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). The defendant contends that the evidence was deficient in two respects: first, it failed to establish that he "carried" the weapon within the meaning of G. L. c. 269, § 10(*a*); and second, it failed to prove that he was outside the limits of his own property or residence at the time of the alleged offense. We disagree with the defendant's contentions.

Prior decisions of this court have established that "carrying" a firearm connotes more than momentary possession. Rather, the defendant must knowingly have moved a working firearm from one place to another. *Commonwealth* v. *Seay, supra,* and cases cited. The defendant argues that because Officer McCartin did not see the firearm in the defendant's possession until the defendant was standing stationary on the steps, the Commonwealth failed to prove the requisite movement. The argument is without merit. It is clear that other evidence introduced, viewed in its light most favorable to the Commonwealth, supports the inference that the defendant carried the weapon. Officer McCartin testified that he saw the defendant walk the eight to ten feet from the backyard to the back steps of the house. He further testified that he saw no one hand the defendant anything; neither did he see the defendant pick anything up from the ground. Finally, Officer McCartin testified that the defendant himself stated that he had been showing his friends what bullets could do to a windshield. The jury could reasonably have inferred that the defendant discharged the weapon into the windshield, replaced it in its holster, and proceeded to and up the stairs of 82 Leonard Street. Such conduct constitutes "carrying" within the meaning of G. L. c. 269, § 10 (*a*). Cf. *Commonwealth* v. *Atencio,* 345 Mass. 627 (1963) (temporary possession during game of Russian roulette not "carrying").

Whether there was sufficient evidence for the jury to conclude that the defendant was beyond the limits of his property or residence at the time of the alleged offense is a more difficult question. Yet, it is one that we must also resolve in the Commonwealth's favor. In *Commonwealth v. Seay*, 376 Mass. 735, 742 (1978), this court stated that the unlicensed "carrying [of] a firearm within one's residence or place of business by one having a valid firearm identification card is not a criminal offense." We held in that case, however, that G. L. c. 269, § 10(a), does prohibit "the unlicensed carrying of a firearm in a foyer or other common area of an apartment building by one who merely happens to rent an apartment therein." *Id.* at 743. Thus, the crucial issues in the instant case are whether the defendant lived at 82 Leonard Street[3] and, if so, whether the backyard and stairs leading to the back porch were areas within his exclusive control. With these principles in mind, we now turn to the evidence introduced.

During cross-examination, defense counsel asked Officer McCartin, "And, Officer, you have no knowledge that 82 Leonard Street, with respect to the apartment, was the apartment of the defendant. Is that correct?" Officer McCartin replied, "I don't know. He said he lived there. I don't know what apartment he lived in." It is perfectly possible that Officer McCartin had no independent knowledge concerning the character of the building at 82 Leonard Street and that he relied on defense counsel's use of the word "apartment" in formulating his response. The possibility similarly exists that defense counsel used the word "apartment" inadvertently and incorrectly, and that what he really meant to say was "house." However, it is not our prerogative, when reviewing the denial of a motion to set aside a guilty verdict, to speculate as to why one phrase, rather than another, was employed during

[3] The defendant has made no claim that 82 Leonard Street housed his place of business.

trial. Rather, we must examine the record as it stands. We have done so and conclude that, taken in its light most favorable to the Commonwealth, the above quoted exchange permitted the jury to find that 82 Leonard Street was a multiple dwelling and that the defendant was in a common area at the time of the alleged offense. It follows that the judge was correct in denying the defendant's motion.

2. Although we discern no error in the denial of the defendant's motion, we recognize the validity of his interpretation of the statutory scheme defining crimes involving firearms. Put simply, whether G. L. c. 269, § 10(a), makes criminal the defendant's conduct depends solely on where the alleged violation occurred. Thus, we turn our attention to that part of the judge's charge which deals with that issue.

The judge charged the jury: "A person who wishes to possess a firearm in his home, . . . may apply for a firearm identification card. This card does not authorize the carrying of a firearm but it does allow you to keep the firearm in your home or in your residence. So, one, if you go out on the street, if you were to walk into this building, you'd have to have a license. You want to have that firearm in your home, then you have to have that identification card. . . . I'm going to read you the law, and you folks will have to make the decision." The judge then read the applicable statutes to the jury and informed them that they would have to determine whether the defendant was in violation of the law. We think the charge was inadequate.

There was evidence that tended to show that the defendant's entire conduct took place in the backyard of the building in which he lived. Whether that backyard was a common area or an area over which the defendant retained exclusive control is crucial in determining the criminality of his conduct. Yet this issue received only the most casual treatment by the parties and was not mentioned at all in the judge's charge. Since this case was

tried before the publication date of our decision in *Commonwealth* v. *Seay*, 376 Mass. 735 (1978), none of the individuals involved stand to blame. Nevertheless, considered now in light of *Seay*, the facts were not developed, argued properly, or treated adequately in the judge's charge. Moreover, defense counsel made no objection and took no exception to the charge with respect to this issue. As a result, the case has reached this court in a posture wherein, on sparse and ambiguous evidence, and with little or no attention directed to the crucial issue, the defendant has been convicted of a crime which carries a minimum mandatory sentence of imprisonment for one year. Because of the substantial risk that a miscarriage of justice has occurred, this is exactly the type of case in which we have granted a defendant relief, even though he registered no appropriate objection or exception to the charge at trial. See *Commonwealth* v. *Freeman*, 352 Mass. 556 (1967). Accordingly, we conclude that the defendant is entitled to a new trial.

If the evidence at a new trial shows that the defendant was within the limits of his property or residence at the time of the alleged offense, he must be found not guilty of the crime charged. The terms "property" and "residence" shall retain their common law meanings and denote those areas, including outside areas, over which the defendant enjoys exclusive control. See, e.g., *Perry* v. *Medeiros*, 369 Mass. 836 (1976) (flight of exterior stairs used by occupants of several apartments in same building characterized as common area); *Martin* v. *Reis*, 344 Mass. 32 (1962) (outside alleyway characterized as common area). Cf. *Sanford* v. *Belemyessi*, 362 Mass. 123 (1972) (exterior stairs and porch used by and within exclusive control of one set of tenants). Thus, unless 82 Leonard Street was a multiple dwelling, the back stairs and yard of which existed for the common use of a tenant or tenants at that address, in addition to the defendant, the defendant was privileged to carry his weapon if he lived there, and was exempt from the provisions of G. L. c. 269, § 10(*a*).

In the unlikely event that no evidence of privilege is introduced at the defendant's new trial, it should be presumed that none existed. However, if the issue of privilege comes properly before the trier of fact, the Commonwealth must prove beyond a reasonable doubt that the defendant was outside the limits of his residence or property at the time of the alleged offense. The existence of a privilege may properly be raised either by the prosecution as part of its case in chief or through evidence brought forth by the defense. Cf. *Commonwealth* v. *Collins*, 374 Mass. 596 (1978); *Commonwealth* v. *Stokes*, 374 Mass. 583 (1978); *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976) (all holding that prosecution bears burden of proving absence of self-defense); *Commonwealth* v. *Greene*, 372 Mass. 517 (1977); *Commonwealth* v. *Johnson*, 372 Mass. 185 (1977) (both holding that prosecution bears burden of proving absence of provocation).

To sum up, we affirm the denial of the defendant's motion for the entry of a not guilty verdict. However, we reverse the judgment, set aside the verdict, and remand this case to the Superior Court for a new trial to be conducted in accordance with this opinion.

*So ordered.*