COMMONWEALTH *vs.* LENWARD STATHAM.

No. 93-P-965.

Suffolk. January 5, 1995. - May 22, 1995.

Present: BROWN, JACOBS, & PORADA, JJ.

*Firearms. Practice, Criminal,* Instructions to jury, Assistance of counsel.
*Statute,* Construction.

At the trial of a complaint for unlawful possession of a firearm, G. L.
c. 269, § 10 (*a*), as amended by St. 1990, c. 511, § 2, the judge cor-
rectly instructed the jury on the words "in or on his residence" appear-
ing in the statute in accordance with the holding of *Commonwealth* v.
*Dunphy*, 377 Mass. 453 (1979), which refers to areas over which the
defendant has "exclusive control" [583-584], and the judge's instruc-
tions on the issue of exclusive control were sufficient [584-585].

At a criminal trial the evidence warranted the judge's denial of the defend-
ant's motion for a required finding of not guilty [585-586], and no error
appeared in the judge's denial of the defendant's motion for a new trial
based on alleged newly discovered evidence and ineffective assistance of
counsel [586].

COMPLAINT received and sworn to in the West Roxbury
Division of the District Court Department on June 15, 1992.

On transfer to the jury session of the Dorchester Division,
the case was tried before *R. Peter Anderson*, J., and a mo-
tion for a new trial was heard by him.

*Timothy M. Farris* for the defendant.

*Ralph C. Martin, II*, District Attorney, & *Katherine E.
McMahon*, Assistant District Attorney, for the Common-
wealth, submitted a brief.

JACOBS, J.  The defendant appeals from his conviction by a
District Court jury of unlawful possession of a firearm, G. L.
c. 269, § 10(*a*),[1] essentially claiming the judge erred in his

---

[1] The defendant does not appeal from his conviction on two counts of
assault by means of a dangerous weapon (G. L. c. 265, § 15B). He also

instructions to the jury. Because the defendant did not register an appropriate objection or exception to the charge during the trial, we review to determine whether there was a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). *Commonwealth* v. *Dunphy*, 377 Mass. 453, 459 (1979).

The jury could have found that the defendant, on June 15, 1992, in response to noise or activity on or near a house and lot at 18 Weld Avenue, in the Jamaica Plain section of Boston, discharged a firearm (a .22 caliber handgun) into the air.[2] The Commonwealth's evidence placed the defendant on the sidewalk or street when he fired while the defendant testified he was in the backyard of the house at the time. There also was evidence relating to whether the defendant lived at the house, and whether the defendant's mother, and his wife from whom he was separated and their two children, lived on different floors. There was testimony that the house had been purchased by the defendant, with his mother and aunt.

The applicable statute, G. L. c. 269, § 10(*a*), as amended by St. 1990, c. 511, § 2, effective January 2, 1991, provides in pertinent part:

> "Whoever . . . knowingly has in his possession . . . a firearm . . . without . . .: (1) being present in or on his residence . . . shall be punished. . . ."

The relevant circumstance is that the 1991 amendment substituted "knowingly has in his possession" for "carries on his person" in the first sentence and inserted the "being present in or on his residence" exemption. While the pre-1991 version of § 10(*a*) did not contain a similar exemption, the Supreme Judicial Court interpreted the statute as exempting the keeping or carrying of a firearm within a residence or place of business. *Commonwealth* v. *Seay*, 376 Mass. 735, 741-743 (1978). In *Commonwealth* v. *Dunphy*, *supra* at 459,

---

was found not guilty on two additional counts of assault by means of a dangerous weapon.

[2] The defendant was not then licensed or otherwise authorized to carry or possess a firearm under G. L. c. 269, § 10(*a*)(2), (3), or (4).

tried under the pre-1991 version, the court held that a mere judicial reading to the jury of the applicable statutes did not constitute adequate instruction and stated:

> "If the evidence at a new trial shows that the defend-
> ant was within the limits of his property or residence at
> the time of the alleged offense, he must be found not
> guilty of the crime charged. The terms 'property' and
> 'residence' shall retain their common law meanings and
> denote those areas, including outside areas, over which
> the defendant enjoys exclusive control."

The judge, following *Dunphy,* instructed the jury that the defendant was entitled to the benefit of the exemption if he possessed the firearm within a property or residence under his exclusive control. The defendant argues that the statute operates to exempt unlicensed possession within the "curti-lage" or boundaries of the possessor's residence and asserts that the judge erred, as matter of law, in patterning his instruction on case law interpreting the pre-1991 version of G. L. c. 269, § 10(*a*).

We presume that the Legislature, in enacting the 1991 amendment, was aware of the *Dunphy* decision and "merely put in statutory form what already had been declared by judicial exposition." *Wenz* v. *Pastene,* 209 Mass. 359, 362 (1911). *Killam* v. *March,* 316 Mass. 646, 651 (1944). See *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950); 2A Singer, Sutherland Statutory Construction § 45.12, at 62 (5th ed. rev. 1992). In the absence of any statutory definition of the words "in or on his residence" in the applicable statute, we conclude that the case law interpretation controls. Accordingly, the judge's instructions based on *Dunphy* were not error.

The defendant also claims the instructions were erroneous regarding the issue of exclusive control.[3] In response to the

---

[3]Essentially, the defendant asks that we conclude, as matter of law, that he had exclusive control of the backyard, since he claims it is within the "curtilage." Exclusive control, however, appears to be a factual determination in any event. See *Commonwealth* v. *Morales,* 14 Mass. App. Ct. 1034

jury's specific question, "[w]hat is exclusive control?" the judge stated:

> "The issue . . . is whether the back yard [is] a common area or an area over which the defendant retained exclusive control. . . . whether [the house] was a multiple dwelling of more than one household with the yard existing for the common use of the tenants or whether it was one residence at which more than one person lived where the defendant and others had exclusive control over the back yard . . . whether or not the defendant resided at this location and whether or not he resided in one household over which he and the household members had exclusive control or whether it was a multiple dwelling unit of more than one household."

This aspect of the instruction sufficiently set before the jury the analysis called for by the evidence and the law to determine whether the defendant resided there, and whether he was in exclusive control of that part of the property from which he claimed he fired the shots.

*Other issues.* The Commonwealth's evidence placing the defendant in the street or sidewalk at the time he discharged the firearm amply supports the denial of the defendant's motion for a required finding of not guilty. *Commonwealth* v.

---

(1982). Moreover, where the term "property" is not defined by the applicable statute, we resort to the common law. *Commonwealth* v. *Dunphy*, 377 Mass. at 459. See *Commonwealth* v. *Murphy*, 353 Mass. 433, 436 (1968); *Commonwealth* v. *Correia*, 17 Mass. App. 233, 235 (1983).

Our courts have discussed areas over which one may have exclusive control in terms of whether stairways, hallways, a porch, and yards are common areas in the context of multiple dwelling buildings. See *Commonwealth* v. *Dunphy, supra,* and cases cited. We perceive nothing in the cases discussing curtilage which suggests that the open areas within a curtilage should be given the same legal exemption, in this case, as the residence or dwelling itself. See *Commonwealth* v. *Murphy, supra* at 436. Cf. *Commonwealth* v. *Thomas,* 358 Mass. 771, 774-775 (1971) ("In a modern urban multi-family apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control. . . . In such an apartment house, a tenant's 'dwelling' cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control").

*Latimore*, 378 Mass. 671, 677 (1979). Also unpersuasive is the defendant's claim that the trial judge erred in denying his motion for a new trial based upon newly discovered evidence and ineffective assistance of counsel. The judge did not abuse his discretion in concluding that the information in the affidavit of a neighbor tending to show that the defendant was in the yard when the gun was fired was available during the trial and that the issue presented was not sufficiently significant to require an evidentiary hearing. Also within the judge's discretion was his conclusion that the alleged inadequacies of counsel essentially involved strategic judgments of a type which did not violate the standards of *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*