## COMMONWEALTH vs. RASHAWN MOORE
## (and a companion case[1]).

Nos. 00-P-506 & 00-P-1324.

Suffolk. June 25, 2001. - March 28, 2002.

Present: DREBEN, CYPHER, & BERRY, JJ.

*Firearms. Dangerous Weapon. Search and Seizure,* Exigent circumstances. *Practice, Criminal,* Motion to suppress, Required finding, Question by jury, Instructions to jury.

The judge at a pretrial hearing on a motion to suppress evidence in a criminal matter did not err in concluding that exigent circumstances justified the warrantless entry by police officers into an apartment and a bedroom in the apartment, as well as the search of a duffle bag, where multiple reports of gunshots, the quick response of the police, and the fact that a bystander pointed the police to the apartment established both probable cause to enter the apartment and exigency; where the exigency continued once the officers entered the apartment, smelled gunpowder, and were directed to the bedroom, where the officers saw spent shell casings and a handgun in plain view; and where probable cause to believe that at least one nine millimeter gun was still undiscovered justified the search of the duffle bag. [336-340]

At the trial of criminal complaints, the judge properly denied the defendants' motions for a required finding of not guilty on the counts alleging possession of two handguns, where the jury could have found that the defendants were aware of the presence of the guns and had the ability and intention to exercise control over them. [341-342]

At the trial of a criminal complaint alleging that the defendant possessed a gun while not in his residence, the jury could have found that the defendant was not in his residence, where a third person had indicated to police officers that he controlled the apartment and referred to the defendant and others in a way that suggested they were not roommates or cotenants; therefore, the judge properly denied a motion for a required finding of not guilty. [342]

The judge at the trial of criminal complaints alleging possession of a firearm with the knowledge that the serial number was defaced properly denied motions for a required finding of not guilty, where the defendants' constructive possession of the firearm brought them within the scope of G. L. c. 269, § 11C, which states that possession of such a firearm is prima facie evidence of a violation of that section. [342-343]

At the trial of a criminal complaint alleging possession of a firearm outside the defendant's residence, the judge's answer to a question by the jury

---

[1]Commonwealth vs. James Jones.

regarding whether the defendant's residence included a roommate's bedroom could have misled the jury, which, if properly instructed, could have found on the facts of the case that the defendant was within his residence even if he shared the apartment with roommates, and even if he possessed the gun in a roommate's bedroom; therefore, this court reversed the defendant's conviction on this count and remanded for a new trial. [343-346]

COMPLAINTS received and sworn to in the Dorchester Division of the District Court Department on September 4, 1998.

Pretrial motions to suppress evidence were heard by *Sarah B. Singer,* J., and the cases were tried before *Rosalind Henson Miller,* J.

*Jose Luis Serpa* for Rashawn Moore.

*Robert A. O'Meara* for James Jones.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. After their motions to suppress evidence were denied, the defendants, Rashawn Moore and James Jones, were tried together before a jury in the District Court on various charges.[2] The jury found Moore guilty of two counts of possessing a firearm, not at home or at work and without a license, G. L. c. 269, § 10(*a*), and of one count of receiving a firearm with the serial number defaced, G. L. c. 269, § 11C. The jury found Jones guilty of carrying ammunition, G. L. c. 269, § 10(*b*); possessing a dangerous weapon, G. L. c. 269, § 10(*b*); two counts of possession of a firearm without an identification card, G. L. c. 269, § 10G, and possession of a firearm with a defaced serial number, G. L. c. 269, § 11C(*a*). The defendants advance similar claims on appeal: that the judge erred when she concluded that exigent circumstances or consent justified the

[2]In addition to the charges on which this appeal is based, the complaint charged Moore with one count of discharging a firearm within five hundred feet of a building, G. L. c. 269, § 12E, for which the court allowed a motion for a required finding of not guilty; and one count of conspiracy, on which the jury found him not guilty. A separate complaint charged Jones with another count of carrying a dangerous weapon, G. L. c. 269, § 10(*b*); one count of discharging a firearm within five hundred feet of a building, G. L. c. 269, § 12E; illegal possession of a class D substance, G. L. c. 94C, § 34; and conspiracy. The judge allowed Jones' motion for a required finding of not guilty with regard to these charges.

warrantless search, and that their motions for required findings of not guilty should have been allowed. In addition, Moore argues that the judge incorrectly answered the jury's question regarding whether possessing a firearm in the bedroom of a housemate falls within the "residence" defense of G. L. c. 269, § 10(*a*). We affirm the denials of the motions to suppress and of the motions for a required finding of not guilty. With regard to Moore, we reverse the verdict of guilty on the charge of possessing a firearm.

1. *The motion to suppress.* We summarize the judge's findings, which we supplement with undisputed evidence. *Commonwealth* v. *Hurd,* 51 Mass. App. Ct. 12, 13 (2001). On the evening of September 3, 1998, Boston police Officers Frank Colon and Martin Columbo went to 435 Quincy Street because the police received multiple reports of shots fired at that location. Arriving within three minutes of the police dispatch, the officers encountered an unidentified male standing in front of the three-family building who said "[t]hey have a Tech-Nine up there. They have been shooting out the window of the second floor."[3] Accompanied by other officers, and with guns drawn, Colon went to the second floor apartment of the three-family house, while Columbo went up the back steps of the building to a landing outside the rear bedroom of the second-floor apartment.

Colon knocked on the door of the apartment. A man named Wendell Davis answered the door and told the officers that he rented or "controlled" the apartment. After they asked him if anything was going on in the apartment, Davis said some of his friends were in the back bedroom, and he let the police into the apartment. There were five people in the living room, including Davis. There was an odor of gunpowder in the apartment.

Colon announced his presence and pushed open the door to the back bedroom. He smelled gunpowder in the bedroom. Colon also saw a man, later identified as M.L. Jones, lying on the bed and talking on the telephone. As Colon ordered Jones out of the bedroom, he heard muffled voices and a thud from somewhere to his left, behind the open bedroom door and inside

[3]A "Tech-Nine" is a semiautomatic handgun. *Commonwealth* v. *Ramos,* 51 Mass. App. Ct. 901, 902 (2001).

the room. Colon ordered whoever was there to leave the bedroom. Two men emerged from behind the open bedroom door. They were later identified as the defendants, Rashawn Moore and James Jones.

In the meantime, as Columbo approached the second-floor apartment from the rear of the building, he saw two nine millimeter shell casings under the rear bedroom window. Columbo heard voices inside the bedroom and saw the defendants standing in front of a closet with no door. Upon hearing Colon order the men out of the room, Columbo entered the bedroom through the window on the porch and accompanied the defendants to the living room. Columbo conducted a patfrisk of the three men who had been in the bedroom, but did not find any weapons.

Colon conducted a protective sweep of the bedroom. He saw the closet with no door. On the floor of the closet, he saw a .38 caliber handgun and discharged .38 caliber shells. Next to the .38 was a blue duffle bag. Colon quickly conducted a patfrisk of the bag and felt a hard object, which he thought could be another weapon. Colon looked in the bag and found a Tech-Nine firearm. Colon seized the handguns and remained in the bedroom with the guns while the other officers completed the arrests.

When reviewing a motion to suppress, we do not disturb the judge's findings unless they are clearly erroneous, but we conduct a de novo review of the conclusions of law. *Commonwealth* v. *James*, 427 Mass. 312, 314 (1998). The judge's findings of fact are amply supported by the evidence. At issue is whether, as the motion judge concluded, exigent circumstances justified the warrantless entry of the apartment, the back bedroom, and, ultimately, the search of the duffle bag.[4]

Warrantless searches in a dwelling are presumptively

---

[4]The judge also concluded that Wendell Davis implicitly consented to the entry of the rear bedroom when he directed the officers to the rear bedroom. Jones claims that this is insufficient for valid "third party" consent, and that even if Davis had the authority to consent to the bedroom entry, the consent was not voluntary considering there were five police officers at his door with their weapons drawn. Because we have determined that the officer's conduct was permissible based on probable cause and exigent circumstances, we need not consider this issue. In any event, in the circumstances, it reasonably appeared to the police that Davis possessed the apparent authority to consent to the entry into the apartment and the back bedroom. See *Commonwealth* v.

unreasonable under art. 14 of the Declaration of Rights of the Massachusetts Constitution and the Fourth Amendment to the United States Constitution. To support a warrantless search on the basis of exigent circumstances, the Commonwealth must demonstrate that the police had probable cause and were faced with exigent circumstances such as danger to their lives, danger to the lives of others, or the destruction of evidence, such that it would be impracticable to obtain a warrant. See *Commonwealth v. Forde,* 367 Mass. 798, 800 (1975); *Commonwealth v. DiToro,* 51 Mass. App. Ct. 191, 195 (2001). Whether exigent circumstances exist depends upon an evaluation of all of the attendant circumstances. See *Commonwealth v. Hall,* 366 Mass. 790, 801-803 (1975). See also Smith, Criminal Practice and Procedure § 262, at 194 (2d ed. 1983) (issues presented in cases where exigency is claimed may usually be reduced to two questions: [1] whether the authorities had reasonable grounds to believe that an exigency existed; and [2] whether the actions of the authorities were reasonable under the circumstances). Here, the facts support the judge's conclusion that the police had probable cause and faced exigent circumstances.

The multiple reports of gunshots being fired from 435 Quincy Street, the quick response of the police, and the fact that a bystander pointed the police to the second-floor apartment and said shots had been fired from the window established probable cause and exigency.[5] In this regard, the case is similar to *Commonwealth v. Paniaqua,* 413 Mass. 796, 798 (1992), in which the court concluded that probable cause and exigent circumstances permitted a warrantless entry of an apartment and seizure of a firearm where there was a report of shots fired in an apartment and a person in the apartment building identified the apartment from which the shots were believed to have originated.

---

*Wahlstrom,* 375 Mass. 115, 118 (1978); *Commonwealth v. Maloney,* 399 Mass. 785, 787-788 (1987).

[5]Moore argues that the fact that the officers knocked and waited before entering the second-floor apartment demonstrates that the police did not consider this to be an extraordinarily urgent situation. We do not fault the police for adhering to the common-law requirement of knocking and announcing their presence. Considering that the officers had probable cause to believe that someone inside the apartment had been firing a gun, this course of action likely diminished the chance of injury.

Once the officers were inside the apartment, the exigency continued and probable cause became even more certain; not only did Davis direct the police to the back bedroom, but there was an odor of gunpowder apparent upon opening the bedroom door, and Columbo saw spent shell casings beneath the back bedroom window. See *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998) (strong odor of gunpowder is indication that gun was recently fired). Entry into the back bedroom therefore was reasonable.

Seizure of the .38 caliber handgun observed in plain view on the closet floor was also proper. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting from *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). In light of the fact that shots had been reported fired from the dwelling, the incriminating character of the handgun was immediately apparent.

At this link in the chain of events, the facts diverge from *Commonwealth* v. *Paniaqua*, 413 Mass. 796 (1992). The defendants argue that there was no compelling reason to search the duffle bag because all eight of the people in the apartment were in the living room and under police supervision. Instead, the defendants posit that the police should have secured the apartment and obtained a warrant.

Given the exigency of the situation and the fact that probable cause existed to believe that at least one nine millimeter gun, still undiscovered, had been fired from the apartment window, the police were justified in opening the bag, even without conducting a preliminary tactile examination. The permissible scope of a search is determined by the purpose of the search. Compare *Commonwealth* v. *King*, 389 Mass. 233, 246-247 (1983) (exigent circumstances based on automobile exception also justified warrantless search of duffle bag in automobile); *Commonwealth* v. *Wunder*, 407 Mass. 909, 913 (1990) (exigent circumstances justified search of closed container where there was probable cause that contraband could be in container).

Here, although he did not have to in these circumstances,

Colon limited the scope of his search by conducting a patfrisk of the duffle bag.[6] Colon was able to determine whether the weapon might be in the bag without examining its contents and was able to limit any further warrantless search of the bedroom or the apartment. Had the Tech-Nine not been in the duffle bag, Colon and the other officers could not have been confident of their safety as they completed the arrests and would have been justified in continuing to search the apartment for the gun.[7] Thus, "[t]he search was limited in scope and occurred at a time when the suspicion of danger had not been dispelled." *Commonwealth* v. *Tam Bui,* 419 Mass. 392, 396, cert. denied, 516 U.S. 861 (1995).

Regardless of how finely the law of search and seizure is parsed and labeled, the ultimate touchstone of art. 14 and the Fourth Amendment is whether a search or seizure was reasonable in the circumstances. The officers were entitled to act to insure their safety, the safety of others in the apartment, and the safety of the public. The search did not exceed the scope justified by the exigency and probable cause to believe that another gun remained on the premises. Given the facts, their conduct was reasonable. See *Boston Hous. Authy.* v. *Guirola,* 410 Mass. 820, 829 (1991) (warrantless entry to secure shotgun reasonable in circumstances); *United States* v. *Lopez,* 989 F.2d 24, 26-27 (1st Cir.), cert. denied, 510 U.S. 872 (1993) (search of bathroom ceiling for sawed-off shotgun which had been displayed moments earlier reasonable). Cf. *Cady* v. *Dombrowksi,* 413 U.S. 433, 447 (1973) (emergency doctrine justified entry of impounded vehicle to retrieve loaded revolver).

---

[6]The motion judge analogized Colon's manipulation of the duffle bag to a patfrisk of a person, and concluded that the patfrisk was proper because Colon had reasonable articulable suspicion that another firearm was in the room and that it had been used in a crime. Case law supports such patfrisks of bags or containers for weapons in limited circumstances. See *Commonwealth* v. *Sumerlin,* 393 Mass. 127, 130 (1984), cert. denied, 469 U.S. 1193 (1985) (finding protective search proper when the bag was within reach of two men and officer felt weapon inside); *Commonwealth* v. *DiMatteo,* 12 Mass. App. Ct. 547, 551 (1981) (reasoning it was possible, owing to soft and thin material of handbag, to feel gun inside bag). Compare *Commonwealth* v. *Silva,* 366 Mass. 402, 410 (1974) (finding patfrisk of small bag clearly to be search for evidence rather than protective search).

[7]The search of the duffle bag could also have been incident to arrest.

2. *The motions for a required finding of not guilty.* The jury could have found facts nearly identical to those elicited at the hearing on the motion to suppress. In addition, the jury could have found that the odor of gunpowder was stronger near the bedroom and that the area in the bedroom from which Colon heard muffled voices and a "thud" was the same area from which the defendants emerged when ordered out by Colon.

The defendants testified in their own defense. Both testified that they were on the bed and not near the closet when the police entered the bedroom and that there was a closed door on the closet. Moore testified that he had moved into the apartment just the day before but that he had the bedroom next to the bathroom and the back bedroom belonged to Davis. Moore moved in with several bags of clothes, but with no other possessions or furniture. Moore also testified that although he had not paid rent, he would have pulled his weight. According to Moore, he had just returned from a trip to the liquor store; he had placed the liquor in the refrigerator and had gone into the back bedroom to use the telephone when the police arrived. Moore had been in the back bedroom "a lot of times" because that was the location of the only telephone in the apartment and because he socialized with the "owner" of the room. Moore's former girlfriend testified that she had helped him move his belongings from her apartment to Davis' apartment.

a. *Possession of the .38 caliber handgun and the Tech-Nine handgun.* Moore and Jones each argue that there was insufficient evidence to demonstrate that they possessed the two firearms. Viewed in the light most favorable to the Commonwealth, the jury could have found that the defendants had constructive, if not actual, possession. Specifically, the jury could have found that they were aware of the presence of the guns and had the ability and intention to exercise control over them. *Commonwealth v. Clarke*, 44 Mass. App. Ct. 502, 505-506 (1998). Contrary to their claims, there was sufficient indicia of possession, apart from mere presence, from which the jury could have concluded that the defendants were in at least constructive possession of the guns.

The smell of gunpowder, coupled with the quick response of the police after reports of shots fired and the presence of the

spent nine millimeter casings, permitted the jury to infer that the gun had recently been fired by someone nearby. Compare *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. at 936 (conviction of defendant for constructive possession of handgun found underneath seat where it was reasonable to infer that defendant knew about gun because smell of gunpowder indicated someone close to it had recently fired gun). The inference was strengthened by the evidence that muffled voices and a "thud" were heard in the area of the room, behind the open door and near the closet where the firearms were found, and that Moore and Jones were standing by the closet. Compare *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989) (defendant hiding in closet where contraband found allowed inference of consciousness of guilt). Contrast *Commonwealth* v. *Brown*, 50 Mass. App. Ct. 253, 257-258 (2000) (insufficient evidence to establish that defendants were in possession of firearm found under couch they were sitting on where gun was not in plain view but hidden, and there was no indication gun had been recently fired and no suspicious movements). This evidence of possession was sufficient to meet the Commonwealth's threshold burden of proof.

b. *The residency exemption.* Moore also argues that the evidence was insufficient to establish that he possessed either gun while not in his residence, as required by G. L. c. 269, § 10(*a*). Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found that Moore was not "in his residence." Davis had indicated to the police that he rented or controlled the apartment. Davis also referred to the people in the back bedroom as friends, suggesting that they were not roommates or cotenants. Notwithstanding Moore's testimony that he had rented the other bedroom from Davis, the evidence was sufficient to survive a motion for required finding of not guilty.

c. *The defaced serial number.* Both defendants claim that the evidence was insufficient to establish that they possessed the Tech-Nine with the knowledge that the serial number was defaced. General Laws c. 269, § 11C, provides that possession of a firearm that has the serial number removed, defaced, altered, obliterated, or mutilated in any manner is prima facie evidence that the person "having such possession or control is

guilty of a violation of this section; but such prima facie evidence may be rebutted by evidence that such person had no knowledge whatever that such number had been removed . . . or by evidence that he had no guilty knowledge thereof." The defendants argue that, because possession in this case was constructive and not actual, this presumption should not apply. The statute makes no distinction between constructive and actual possession for purposes of the presumption, and we decline to read in such a distinction.

3. *Answer to the jury question whether the exemption applied.* The jury were instructed, with regard to the exemption contained in G. L. c. 269, § 10(*a*), that the Commonwealth was required to prove beyond a reasonable doubt that "the defendant possessed the firearm outside of his residence or place of business. A person's residence does not include common areas of an apartment or office building, but only areas that are under the person's exclusive control." During deliberations, the jury asked: "Do separate bedrooms in the same apartment mean that each roommate's home includes all bedrooms. Is your bedroom plus only common rooms defined as your home? Does your home include your roommate's bedroom?"

Moore asked the judge, essentially, to instruct the jury that the entire apartment, including a roommate's bedroom, fell within the meaning of the residence exemption. The judge declined and answered the jurors' question as follows:

> "with respect to your question, that the defendant possessed the firearm outside his residence or place of business. A person's residence or place of business does not include common areas of an apartment or office building, but only areas that are under that person's exclusive control. Exclusive control is a factual determination for the jury. It is not a question of law. It is for you to decide then, whether the defendant was present in or on his residence."

Moore objected to this answer; therefore, we must be satisfied that if there was error, it was not prejudicial.

The original instruction and answer were correct in that they properly conveyed to the jury that whether Moore was within

his residence for purposes of the statute was a question of fact for the jury. See *Commonwealth* v. *Dunphy*, 377 Mass. 453, 458-460 (1979); *Commonwealth* v. *Morales*, 14 Mass. App. Ct. 1034, 1035 (1982); *Commonwealth* v. *Belding*, 42 Mass. App. Ct. 435, 439 (1997). The instruction and answer also correctly conveyed to the jury that a person is not in their residence for purposes of the statute if they are in a common area over which they do not have exclusive control. *Commonwealth* v. *Statham*, 38 Mass. App. Ct. 582, 584 n.3 (1995).

Nevertheless, on the facts of this case, the answer to the jury's question could have misled the jury. The legislative history in this regard is instructive.[8] Before 1990, the statute did not include the exemption for a person present in his or her residence or place of business; however, the courts have stated that the 1990 amendment "merely put in statutory form what already had been declared by judicial exposition." *Commonwealth* v. *Statham*, 38 Mass. App. Ct. at 584. See *Commonwealth* v. *Belding*, 42 Mass. App. Ct. at 437. In *Commonwealth* v. *Seay*, 376 Mass. 735, 740 (1978), the court found "an implicit exemption from criminal liability for one who has a firearm identification card and carries a firearm within his residence or place of business," notwithstanding the silence of the statute and its failure to make a distinction among places. Reaching this conclusion by reference to G. L. c. 140, § 123, the *Seay* court pointed out that a dealer may not deliver a firearm except to an unlicensed purchaser at his "residence or place of business," and stated, "[i]t is plainly unreasonable to suppose

_____

[8]General Laws c. 269, § 10, has been amended several times since its passage in 1906. The intent of G. L. c. 269, § 10, "is to protect the public from the potential danger incident to the unlawful possession of such weapons." *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 219 (1950); *Commonwealth* v. *Lindsey*, 396 Mass. 840, 842-843 (1986). In 1990, the statute was amended to include an exemption for a person present in his or her residence or place of business. *Commonwealth* v. *Belding*, 42 Mass. App. Ct. at 437 n.3. The original amendment stated: "The purpose and intent of this act is to impose a minimum one year mandatory jail sentence without exception for any person who is unlicensed to possess a firearm, rifle or shotgun away from his home or place of business and does so." *Ibid*. Before the amendment, even though the statute had not contained the residence or business exemption, "the Supreme Judicial Court interpreted the statute as exempting the keeping or carrying of a firearm within a residence or place of business." *Commonwealth* v. *Statham*, 38 Mass. App. Ct. at 583.

that the legislature intended a lawful possessor to be penalized for carrying a firearm within the very place to which a dealer may lawfully deliver it." *Id.* at 742.

The facts of this case suggest that "residence" here includes the entire apartment. Not only would Moore have to go through other parts of the apartment to answer the door, but the evidence contains indications that he had full use of the whole unit. He testified that after he bought liquor on the evening of September 3, he brought it into the kitchen. He had access to the apartment's only telephone, which was located in Davis's room. In these circumstances, the judge's instructions were inadequate and misleading. See *Commonwealth* v. *Dunphy*, 377 Mass. at 459 (term "residence" retains its common-law meaning). Compare *Commonwealth* v. *Jefferson*, 36 Mass. App. Ct. 684, 687 (1994) ("dwelling" in G. L. c. 278, § 8A, is apartment itself and does not comprise nonexclusive hallway outside apartment).

Our conclusion is buttressed by the fact that cases discussing the requirement that a common area be within the "exclusive control" of the defendant for purposes of the exemption consistently involve areas outside of the defendant's apartment or home.[9] See *Commonwealth* v. *Seay*, 376 Mass. at 743 (foyer or other common area of apartment building is not within residence exemption of G. L. c. 269, § 10); *Commonwealth* v. *Samaras*, 10 Mass. App. Ct. 910, 910 (1980) (violation of G. L. c. 269, § 10, which occurred on sidewalk in front of defendant's house, took place in location not within defendant's exclusive control); *Commonwealth* v. *Statham*, 38 Mass. App. Ct. at 584-585 (whether backyard was under defendant's "exclusive control" was question for jury); *Commonwealth* v. *Belding*, 42 Mass. App. Ct. at 440 (whether landlord was in area of "exclusive control" when he stuck his arm out of his apartment and fired gun into hallway was question of fact for jury).

Properly instructed, the jury could have found that Moore

---

[9]The term "common area" typically refers to areas over which the landlord retains control, for example, the stairways, corridors, elevators, lobbies, or grounds of an apartment. Restatement (Second) of Property, Landlord & Tenant § 5.5 comment c, illus. 4, 5 (1977); Cunningham, Stoebuck, & Whitman, The Law of Property § 6.36, at 293 (2d ed. 1993).

was within his residence for purposes of the exemption even if he shared the apartment with roommates, and even if Moore possessed the gun in a roommate's bedroom. See *Commonwealth* v. *Morales*, 14 Mass. App. Ct. at 1035 (reasoning that even if defendant lived with girlfriend from "time to time" in his apartment, this fact alone would not warrant finding that he lacked exclusive control of premises). Cf. *Sanford* v. *Belemyessi*, 362 Mass. 123, 125-126 (1972) (finding that exterior stairs and porch were used by and within exclusive control of one set of tenants).

A more appropriate instruction, on the facts of this case, might have been as follows: the Commonwealth has the burden of proving that the defendant was not within his residence or place of business when he possessed the gun; whether the Commonwealth has proven that the defendant was not within his residence is a question of fact for you to determine; in a dwelling with multiple units, a residence may be the entire unit if the person dwelling therein is not excluded from any part thereof and has access to all the rooms; a common area is an area outside the residence to which all of the tenants in a building have access and the landlord maintains control; an area outside of the residence will still fall within the exemption if it is an area over which the defendant maintains exclusive control alone or with other members of the residence. See *Commonwealth* v. *Statham*, 38 Mass. App. Ct. at 585 (approving jury instruction which stated exclusive control of backyard could be maintained by defendant and other members of household).

4. *Conclusion.* Moore's convictions for possessing a firearm, not at home or work, are reversed and remanded for a new trial. Moore's conviction for receiving a firearm with the serial numbers defaced is affirmed. Jones's convictions are affirmed.

*So ordered.*