COMMONWEALTH *vs.* WILLIAM CATALDO
(and a companion case[1]).

No. 05-P-1158.

Suffolk. January 8, 2007. - June 28, 2007.

Present: DOERFER, TRAINOR, & KATZMANN, JJ.

*Search and Seizure,* Probable cause, Exigent circumstances, Affidavit, Warrant. *Probable Cause. Practice, Criminal,* Motion to suppress. *Constitutional Law,* Probable cause. *Firearms. Robbery.*

A trial court judge did not err in granting criminal defendants' motions to suppress evidence seized by police officers as a result of their warrantless entry into an apartment, where the record, although ambiguous with regard to the existence of probable cause to search the premises [468-473], did not establish the exigent circumstances necessary for the police to effectuate a warrantless entry into the apartment, in that the destruction or loss of evidence was not likely, no public safety considerations existed, and the officers had a reasonable opportunity to secure the premises from the outside and obtain a warrant [473-475]; moreover, where the subsequent search warrant application did not contain information sufficient to establish probable cause to enter the apartment, the Commonwealth could not demonstrate that the evidence was acquired independently by lawful means untainted by the initial illegal entry [475-476].

INDICTMENTS found and returned in the Superior Court Department on April 3, 2003.

Pretrial motions to suppress evidence were heard by *Charles T. Spurlock,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Martha B. Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Helle Sachse,* Assistant District Attorney, for the Commonwealth.

*Paula Finley Mangum* for William Cataldo.

[1]Commonwealth *vs.* Elaine Goodwin.

*Leslie Feldman-Rumpler* for Elaine Goodwin.

KATZMANN, J. After indictment by a Suffolk County grand jury, the defendants, William Cataldo[2] and Elaine Goodwin,[3] filed motions to suppress evidence. Following a hearing, a Superior Court judge issued a written memorandum allowing the motions on the grounds that the police lacked the probable cause and exigent circumstances necessary to effectuate a warrantless entry. A single justice allowed interlocutory review. We affirm the allowance of the motion to suppress.

*Background.* After a hearing at which Detective Ed Conley was the only witness, the judge made the following findings of fact.

Between December, 2002, and January, 2003, three armed incidents occurred in Revere, Chelsea, and East Boston. In the first incident, on December 5, 2002, Timothy Deconnick[4] and Cataldo allegedly committed an armed robbery in East Boston.[5] On December 12, 2002, the second incident, an armed carjacking (on Webster Avenue) in Chelsea, occurred, allegedly perpetrated by Deconnick and Ralph Rizzutti. The third incident, an armed home invasion in Revere, occurred on January 6, 2003, and was allegedly committed by Deconnick and Eric Bua.

Witnesses "positively identified" Deconnick and Rizzutti as the parties involved in the Chelsea carjacking and Deconnick and Bua as the participants in the Revere home invasion. Based on this evidence, the police obtained arrest warrants for Deconnick, Rizzutti, and Bua.

On January 9, 2003, State and local police went to 192 Webster Avenue in Chelsea. "The police did not uncover any evidence

---

[2]Cataldo was indicted for assault and battery on a police officer in violation of G. L. c. 265, § 13D; unlawful possession of a firearm in violation of G. L. c. 269, § 10(*h*); as an armed career criminal under G. L. c. 269, § 10G; and unlawful possession of a class A controlled substance in violation of G. L. c. 94C, § 34.

[3]Goodwin was indicted for the unlawful possession of a firearm and unlawful possession of a class A controlled substance.

[4]There appears to be some inconsistency in the spelling of Deconnick. We adopt the version indicated here.

[5]Detective Conley testified that a handgun was the weapon used in the armed robbery.

related to the armed incidents, nor did they find any of the various suspects."[6]

On that same day, however, a Revere police detective informed a Chelsea police detective that a "suspect" in the incidents "may be at 222 Clarke Avenue in Chelsea," which is Cataldo's residence.[7] On the basis of this information, police began surveillance of the multi-unit building at this address.[8]

During the course of a two-hour surveillance, police observed Cataldo looking out a second-story window; a man "matching" Deconnick's description leave the building, use a public telephone on the street, and re-enter the building; and Goodwin leave the building, enter Cataldo's motor vehicle, operate the vehicle, and later return to the apartment. Subsequently, the police observed Cataldo and the man "matching" Deconnick's description leave the building, enter Cataldo's vehicle, and drive away. After "one-half of a block," the officers attempted to effectuate a stop of the vehicle,[9] but Cataldo left the vehicle and fled on foot, while the vehicle operator increased the vehicle's speed in an attempt to evade capture. Both Cataldo and the second individual were detained and arrested in short order. A search of the vehicle and their persons did not reveal weapons or other implements relating to the aforementioned incidents.

The officers immediately proceeded to apartment 2 of 222 Clarke Avenue "on the belief that the fruits of the armed incidents

---

[6]The judge's findings do not specify whether the police had a warrant to search 192 Webster Avenue or whether a search of 192 Webster Avenue was conducted pursuant to a warrant. Detective Conley testified that the police had gone to 192 Webster Avenue to arrest Deconnick and Bua. There is no indication that they searched that residence or that they had a search warrant for that address.

[7]The judge noted that "[i]t is not known how [the detective] obtained this knowledge."

[8]At the motion to suppress hearing, Detective Conley stated that he believed Bua, Deconnick, and Rizzutti were using 222 Clarke Avenue for a hideout. However, on cross-examination, Conley conceded that he, as well as the other officers, had no basis for this information. Moreover, Conley conceded that two hours into the stakeout (by which time the police had determined that a suspect similar in appearance to Deconnick was present), the officers did not have probable cause to obtain a search warrant.

[9]The stop of Deconnick and Cataldo occurred between one hundred and one hundred and fifty feet from 222 Clarke Avenue.

may be at that location and such evidence was likely to be destroyed by anyone else who may be in the apartment." No response was forthcoming either to their knock on the door or to the announcement of their presence. However, the police heard "running of footsteps from inside" and, concerned about the possible destruction of evidence, forcibly entered the apartment. Upon entering, Goodwin was observed attempting to hide "something underneath the bed covers." A protective sweep revealed a .22 caliber rifle in plain view. The rifle contained ammunition. The police arrested Goodwin[10] and secured the apartment pending the issuance of a search warrant.

The police then sought an application for a search warrant, seeking, inter alia, "firearms, ammunition, police identification, police badges, police scanners, dark hooded clothes, photos, identification and identifying paperwork." In the course of executing the search warrant, police confiscated the .22 caliber rifle, five rounds of ammunition, and heroin, which constitute the physical evidence at the core of the indictments against Cataldo and Goodwin.[11]

*Discussion.* The Commonwealth appeals the judge's ruling that the warrantless entry was not permissible. In this regard, the Commonwealth argues that the officers had probable cause to enter the apartment because of the probability that weapons and other accoutrements of the three criminal incidents were located there and that the circumstances suggested Goodwin was likely to remove or destroy that evidence.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). See *Commonwealth* v. *Rogers*, 444 Mass. 234, 235 n.2 (2005) ("Although the judge's findings are 'binding in the absence of clear error,' we may reexamine his conclusions

---

[10]The judge did not find that Goodwin was a suspect. Moreover, Detective Conley conceded on cross-examination that Goodwin was not a suspect.

[11]The police also found photographs, a police scanner, a police scanner frequency guidebook, various pieces of mail, and a bottle of white powder marked "Inositol."

of law"). The Commonwealth does not challenge the findings here, but contests the legal conclusion drawn by the judge. After reviewing the findings, we find no clear error and, based on our application of constitutional principles to these findings, affirm the allowance of the defendants' motions.

1. *Warrantless entry.* "Warrantless searches in a dwelling are presumptively unreasonable under art. 14 of the Declaration of Rights of the Massachusetts Constitution and the Fourth Amendment to the United States Constitution." *Commonwealth* v. *Moore,* 54 Mass. App. Ct. 334, 337-338 (2002). "In the absence of a warrant, two conditions must be met in order for a nonconsensual entry to be valid: there must be probable cause . . . and there must be exigent circumstances." *Commonwealth* v. *DeJesus,* 439 Mass. 616, 619 (2003), citing *Kirk* v. *Louisiana,* 536 U.S. 635, 637-638 (2002). See *Commonwealth* v. *Viriya-hiranpaiboon,* 412 Mass. 224, 226 (1992). Unlike a challenge to a search conducted pursuant to a warrant, where the defendant has the burden to show that evidence was obtained illegally, *Commonwealth* v. *Taylor,* 383 Mass. 272, 280 (1981), when the search is conducted without a warrant, the Commonwealth has the burden of proving that the search falls within the narrowly drawn exceptions to the warrant requirement. *Commonwealth* v. *Vuthy Seng,* 436 Mass. 537, 550 (2002).

a. *Probable cause.* A demonstration of a nexus between the criminal activity investigated, the place to be searched, and the items believed to be located in the place is necessary for a determination of probable cause. *Commonwealth* v. *Wilson,* 427 Mass. 336, 342 (1998).[12] Smith, Criminal Practice and Procedure § 193 (2d ed. 1983 & Supp. 2006). It is appropriate that we consider first the items identified by the Commonwealth — namely, the "firearms, ammunition, police identification, police badges, police scanners, dark hooded clothes, photos, identifica-

---

[12]The Commonwealth argued that the following evidence established the nexus: that the suspects were not located at 192 Webster Avenue; that Cataldo's car did not contain the weapons; that Deconnick was a suspect in all three incidents; that a man matching Deconnick's description was observed leaving Cataldo's apartment and using a pay phone in the vicinity; that Cataldo and this second individual left the apartment in Cataldo's vehicle; and that Cataldo and the second individual attempted to evade arrest before being detained.

tion and identifying paperwork." With the exception of the first two items — firearms and ammunition — which are arguably evidence relating to the December 5 armed robbery in which, the Commonwealth contends, Cataldo and Deconnick were implicated, the other items relate to the carjacking and the home invasion, in which Cataldo was not implicated. Indeed, there was no finding by the judge that Cataldo was somehow involved with any of the other suspects in those crimes, or acted together with them in some sort of a crime spree. There was no evidence presented, nor was there any finding by the judge, that there was any link between the carjacking or home invasion evidence and Cataldo's home. That Deconnick, a person with whom he was allegedly implicated in the armed robbery, was seen at Cataldo's 222 Clarke Avenue residence does not create a nexus between those other crimes and Cataldo's home.

The firearms and ammunition evidence stand on different footing since they relate to the armed robbery in which Cataldo was allegedly involved. In determining whether there was probable cause to conduct a warrantless search for the gun and ammunition, we note that the test is based on a familiar inquiry:

> "Does the information possessed by police, at the time of the proposed warrantless search, provide a substantial basis for the belief that there is a timely nexus or connection between criminal activity, a particular person or place to be searched, and particular evidence to be seized?"

Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 14-1[b], at 14-3 (2006). See *Commonwealth* v. *Cinelli,* 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).

Here, the judge found that Cataldo was "allegedly a suspect" in the armed robbery, phraseology which can be contrasted with his language that Deconnick was positively identified as a perpetrator in the carjacking, or that Bua was positively identified as a perpetrator in the home invasion. Thus, there is some ambiguity whether the judge concluded that there was a substantial basis to support a probable cause determination linking Cataldo to the commission of the crime. The Commonwealth points to testimony at the suppression hearing from Detective Conley that a wanted

poster issued after the December 5 robbery depicted two people who he thought looked like Deconnick and Cataldo (although he acknowledged that no arrest warrants had been issued in regard to that crime). In any event, there is no indication that the judge determined that this testimony was persuasive and that there was a substantial basis for linking Cataldo to the armed robbery. Absent such a determination, any subsequent search of Cataldo's residence for the instrumentalities of that crime was impermissible.

On the other hand, to the extent that the judge's decision can be interpreted as concluding that there was a link between Cataldo and the crime, there was a substantial basis for a determination of probable cause. In that event, the first prong would be satisfied, and the warrantless search of Cataldo's home for the weapon and ammunition would be permitted. See, e.g., *Cinelli*, 389 Mass. at 213 (ammunition, which could be used in a future robbery, "might be expected to be located in the residence of a person who had participated in an armed robbery"). While "[t]he mere fact that the [apartment] was the defendant's residence does not establish probable cause for a search warrant to issue . . . [, where the items sought by the police] were 'durable [and] of continuing utility to the defendant[]' . . . [i]t is reasonably likely that such items could be found in a defendant's home after a crime." *Wilson*, 427 Mass. at 343, quoting from *Commonwealth* v. *James*, 424 Mass. 770, 778 (1997). See *Commonwealth* v. *Burt*, 393 Mass. 703, 716 (1985) (coins, tools, clothing, keys, and bank books). That probability was bolstered by the fact that no weapons or ammunition were found in Cataldo's car.[13]

Because we decide that the Commonwealth has not satisfied the exigent circumstances prong necessary to justify a warrantless search, the ambiguity in the record regarding probable

---

[13]The Commonwealth also contends that the probability that the evidence would be found at Cataldo's 222 Clarke Avenue residence was strengthened because a search of the 192 Webster Avenue residence of Deconnick, who the Commonwealth claims was also involved in the robbery, did not yield that evidence. However, as noted above, see note 6, *supra*, the judge found only that the officers had gone to 192 Webster Avenue, and did not make a determination that a search had actually been conducted. The evidence on this question adduced at the hearing does not shed any light on the matter.

cause is not ultimately material to our disposition, nor does it prevent us in this case from deciding the merits of the suppression ruling. However, we would note that the record here should have been clarified in the trial court. No motion for clarification or reconsideration of the judge's rulings was sought by the Commonwealth. Such a motion, by triggering judicial removal of any ambiguity and the unnecessary invitation to speculation and conjecture, would have assisted our review of the record.

To be sure, "[a]ppellate courts may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony. *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 n.2 (1996). *Commonwealth* v. *Santiago*, 410 Mass. 737, 738 n.2 (1991). See *Commonwealth* v. *Butler*, 423 Mass. 517, 526 n.10 (1996) (appellate court considers uncontroverted testimony that 'in no way contradict[s] the motion judge's findings [but] merely fill[s] out the narrative'); *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 492 (2001), *S.C.*, 57 Mass. App. Ct. 36 (2003) and 440 Mass. 642 (2004) (court's willingness to supplement motion judge's findings based on confidence that material 'is indeed uncontroverted' and that motion judge 'explicitly or implicitly credited the witness's testimony')." *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007). Here, however, the Commonwealth asks us to make various assumptions and draw various inferences that do not flow logically from the record, nor do we have confidence that the judge credited the witness's testimony. That a witness may testify (without opposition or express impeachment) to a certain point should not necessarily be equated with a conclusion that the judge accepted his or her testimony. It is conceivable, for example, that after assessing the witness's demeanor, the judge did not credit the witness's words. Thus, in some situations the argument can be made that judicial silence, as reflected in the absence of a finding supportive of the witness, suggests that the judge rejected the testimony. See generally *Commonwealth* v. *Spagnolo*, 17 Mass. App. Ct. 516, 518 (1984), *S.C.*, 20 Mass. App. Ct. 936 (1985). In short, in the context of motions to suppress evidence, litigants looking prospectively to appellate review should be careful to assess the record as developed in the trial

court and should seek resolution of material ambiguity by timely motions for clarification or reconsideration, to the extent they wish to rely on a particular resolution of that ambiguity.

b. *Exigency.* In order to satisfy the exigent circumstances prong permitting a warrantless search and seizure of evidence, an officer must show that he had an objectively reasonable belief that evidence will be removed or destroyed, or that there is a danger to his life or to the lives of others. *DeJesus,* 439 Mass. at 621. *Commonwealth* v. *Colon,* 449 Mass. 207, 216-217 (2007). *Moore,* 54 Mass. App. Ct. at 338. "To meet this burden, the Commonwealth must show that (1) 'the authorities had reasonable ground to believe that an exigency existed,' and (2) their actions were 'reasonable under the circumstances.' " *Commonwealth* v. *McDermott,* 448 Mass. 750, 766 (2007), quoting from *Commonwealth* v. *Morrison,* 429 Mass. 511, 515 (1999). See Smith, Criminal Practice and Procedure § 262 (1983 & Supp. 2006). Whether an exigency existed, as well as the reasonableness of the police's response, "are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *DeJesus,* 439 Mass. at 620 n.3, quoting from *Commonwealth* v. *Young,* 382 Mass. 448, 456 (1981). Whether exigent circumstances are found depends upon a consideration of the totality of the circumstances as they appeared to the officers at the time of entry. *Young, supra. Commonwealth* v. *Molina,* 439 Mass. 206, 209-210 (2003). *Commonwealth* v. *Saunders,* 50 Mass. App. Ct. 865, 875 (2001).

The Commonwealth asserts that exigent circumstances arose in this case because they believed that the fruits of the armed incidents were located in the apartment and that Goodwin had observed the arrest. Further, when they knocked on the apartment door, Goodwin did not answer and was heard running inside the apartment. Accordingly, the Commonwealth argues, the officers had a reasonable basis to believe that the destruction of evidence was likely if they did not enter and secure the premises until a warrant could be obtained and that public safety considerations justified a warrantless entry. We disagree.

"[P]olice officers who secure a dwelling while a warrant is being sought in order to prevent destruction or removal of evidence

may not enter that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken." *DeJesus*, 439 Mass. at 621. Here, the items in issue — a gun and ammunition — were not susceptible to destruction or removal.[14] Although the Commonwealth asserts that a large crowd had gathered to observe the arrest, there was no finding that any party contacted Goodwin and requested that she destroy evidence in the apartment, cf. *Commonwealth* v. *Rotolo*, 45 Mass. App. Ct. 927, 928 (1998) (police overheard defendant instructing father to remove evidence from his room), or that she observed the arrest and independently decided to destroy evidence. See *Commonwealth* v. *McAfee*, 63 Mass. App. Ct. 467, 474 (2005) (emphasizing "the complete absence of evidence of a risk that the defendant had discovered or been informed of the police investigation or the detention of his recent customer"). What is decisive in the final analysis is that, even if Goodwin had somehow been alerted to the police investigation, it is hard to conceive of any way that she could have destroyed or removed firearms or ammunition.

The Commonwealth, however, argues that we should ignore the mechanics of how the police reached the apartment door and that, in any event, Goodwin's actions in response to the knock created an exigency. This argument is not persuasive. See *Molina*, 439 Mass. at 210 ("Implicit in the test itself is that police officers cannot deliberately create the exigency that leads to the warrantless arrest"); *McAfee*, 63 Mass. App. Ct. at 476-477 (officer's creation of exigency by approaching defendant's door impermissible, especially in light of their four-day delay in seeking warrant). As we have noted, the exigent circumstances permitting warrantless entry were not extant here because the destruction or loss of evidence was not likely nor was the pursuit of a warrant impracticable.[15] *DeJesus*, 439 Mass. at 621. *Moore*, 54 Mass. App. Ct. at 338. Moreover, securing the outer perimeter of

---

[14]The Commonwealth contends that other items of interest, such as false identification, clothing, and scanners, were susceptible to destruction. However, those items related to the carjacking and home invasion, in which Cataldo was not involved, and for which there was no nexus to his 222 Clarke Avenue residence.

[15]Even though the judge made a finding that Goodwin attempted to hide

the apartment building while awaiting the warrant would have prevented Goodwin from removing incriminating evidence. See *McAfee*, 63 Mass. App. Ct. at 474.

While we affirm the judge's determination on the record here, that the warrantless search and seizure was not reasonable, we in no way diminish the principle that the "officers were entitled to act to insure their safety, the safety of others in the apartment, and the safety of the public." *Moore*, 54 Mass. App. Ct. at 340. The judge made no findings of fact (nor did the evidence show) that Goodwin, a nonsuspect, did, or even was likely to, use weapons not then known to be located in the apartment against the police or the general public. Cf. *id.* at 338 (noting that danger to police and general public may also permit warrantless entry). Moreover, Goodwin was not even a suspect in the criminal activity. Cf. *Commonwealth v. Duarte*, 56 Mass. App. Ct. 714, 719-721 (2002) (warrantless entry permissible where defendant had committed rape by force and used a dangerous weapon in close temporal proximity to the warrantless entry). In short, after detaining Cataldo and Deconnick, the officers had a reasonable opportunity to secure the premises from the outside and obtain a warrant. Compare *Commonwealth v. Bradshaw*, 385 Mass. 244, 256-257 (1982) (warrantless entry permissible when police attempted arrest during a holiday weekend and were aware that defendant was armed and easily provoked, had panicked at earlier unrelated encounter with police, and had a violent nature).

2. *The search warrant.* Although the admission of evidence obtained during an illegal search is prohibited by the exclusionary rule, "evidence initially discovered as a consequence of an unlawful search may be admissible if later acquired independently by lawful means untainted by the initial illegality." *De-Jesus*, 439 Mass. at 624. In order to admit this evidence, the search warrant application must contain information sufficient to establish probable cause to enter. *Id.* at 625. In considering the application, all information obtained from the initial entry is

something under the bed covers, this is not a case where Goodwin could have made the rifle or the other tangible instrumentalities disappear. See Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 14-1(c)(2), at 14-5 (discussing greater exigency flexibility in narcotics cases).

removed and the remainder "must contain sufficient information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that the items may reasonably be expected to be located in the place to be searched at the time the search warrant issues." *Id.* at 626. Here, even in its full and unredacted form, the search warrant affidavit made no reference to the one crime in which Cataldo was arguably implicated — the December 5 armed robbery. The affidavit makes no reference to that armed robbery, to any purported involvement by Cataldo in that crime, nor to any basis for linking that crime to his residence in 222 Clarke Avenue.[16] Rather, the offenses alleged are the carjacking and home invasion in which he was not involved.[17] We conclude, as did the judge, that there was an insufficient basis for the issuance of the search warrant.[18]

> *Orders allowing motions to suppress affirmed.*

---

[16]The affidavit states, "As a result of their investigation, Det[ectives] Goodwin and Lavita received information that both Deconnick and Bua may be staying at 192 Webster Avenue, Apt. 3, in Chelsea, Mass. Or 222 Clarke Avenue, Apt. 2, in Chelsea, Mass." There is no support presented for this bare assertion.

[17]There is also nothing that indicates that Deconnick stashed evidence of the other two crimes he was allegedly involved in Cataldo's apartment. See notes 5 & 13, *supra.*

[18]The Commonwealth has not argued that either the independent source or the inevitable discovery rule would allow in the evidence that the judge ordered be suppressed. See *McAfee,* 63 Mass. App. Ct. at 468. Here, where the search warrant affidavit that was eventually obtained does not provide probable cause, the Commonwealth cannot avail itself of the above exceptions to the exclusionary rule. See *McAfee,* 63 Mass. App. at 479 & n.12.