NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1219

COMMONWEALTH

vs.

SIFEDDINE ROGADI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Sifeddine Rogadi, was indicted for murder, possession of a large capacity firearm, and possession of ammunition without a firearms identification card.  Following an evidentiary hearing, a Superior Court judge allowed the defendant's motion to suppress the seizure of a car, and the firearm found therein, but denied it as to statements made by the defendant.  After its motion for reconsideration was denied, the Commonwealth filed an application for leave to pursue an interlocutory appeal with the single justice of the Supreme Judicial Court.  The single justice ordered the Commonwealth to supplement its application with a statement as to the viability of its case without the suppressed evidence.  The Commonwealth filed a response, and the single justice allowed the

Commonwealth's application and ordered that the interlocutory appeal proceed in this court.  We affirm.

1.  Background.  We recite the facts as set forth in the judge's memorandum and order.  On December 29, 2020, Jaden Brito-White was shot and killed in the area of 10 Bowdoin Street in Malden by two people, whom a witness described as wearing dark clothing.  The police did not know the race or gender of the shooters, nor did they have any other specific information other than that the shooters wore dark clothing.  Investigators collected video recordings (video) from the area in an effort to identify the car that the shooters drove to and from the scene.  In addition to video from the immediate area where the victim was killed, investigators collected video that showed a car (suspect car) that investigators believed was involved in the shooting.  Video showed that the suspect car drove into a parking lot next to 10 Bowdoin Street, exited the parking lot, and drove onto an intersecting street.

Over the next several days, investigators collected additional videos.  Based on their review, investigators determined that the suspect car was a "maroon-purple color," specifically "black cherry metallic," a color found on only two

2

specific Chevrolet models, the Malibu and the Impala.[1]  On January 5, 2021, investigators drafted a public bulletin for distribution to other police departments.  The bulletin described the suspect car as "a newer model Chevrolet Impala or Malibu with a 'black cherry metallic color' . . . [and] no front registration plate."  That same day, two investigators were in the field collecting additional videos when they saw a "Chevy Malibu, with no front plate and the distinct fog lights, coming up Gledhill . . . on the night of the shooting."  Investigators followed the car as it sped through residential neighborhoods, and instructed Malden police to pull it over.

Police officers pulled over the car, told the driver, later identified as the defendant, that they pulled him over for speeding, and asked him to get out of the car.  Investigators noticed that the car had a white transponder box on the windshield and a moon roof, similar to what they observed in a video of the suspect car.  Upon questioning, the defendant told police that his mother rented the car on December 27, 2020, and that only he and his mother used it.  After police wrote a speeding citation, they told the defendant that they were seizing the car because they "believe[d] [the] vehicle was

---

[1] In a video, an investigator noticed a "Chevrolet emblem" on the car's grill which allowed them to narrow down the manufacturer of the car.

3

involved in a very serious incident that happened several days prior."  The defendant left on foot, the car was seized, and a warrant was later issued to search it.  A semiautomatic firearm was found in the car.

2.  Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations omitted).  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  Here, despite what he described as an exhaustive investigation, the judge concluded that the police lacked probable cause to seize the car.  He did not credit the investigators' testimony about the information they had about the suspect car at the time that they stopped the defendant.  Specifically, the judge found that the "distinctions between the draft bulletin and the later testimony during the hearing are difficult to reconcile and certainly create doubt about [whether] the car seen in the video was the one seized."  The Commonwealth contends this finding was in error.  We are not persuaded as "[t]he determination of the weight and credibility of the [evidence] is the function and responsibility of the judge who saw and heard the witnesses, and not of this court."  Commonwealth v. Gonzalez, 487 Mass. 661, 668 (2021), quoting Commonwealth v. Neves, 474 Mass. 355, 360 (2016).

4

In determining whether the police have probable cause to conduct a warrantless seizure, "we ask whether 'the information possessed by police, at the time of the proposed warrantless search, provide[d] a substantial basis for the belief that there [was] a timely nexus or connection between criminal activity, a particular person or place to be searched, and particular evidence to be seized.'" Commonwealth v. Dame, 473 Mass. 524, 537, cert. denied, 580 U.S. 857 (2016), quoting Commonwealth v. Cataldo, 69 Mass. App. Ct. 465, 470 (2007).

In the context of vehicle seizures, probable cause exists "where facts indicated that there was a connection between the crime and the vehicle." Dame, 473 Mass. at 537. See Commonwealth v. Brown, 367 Mass. 24, 33 (1975) (probable cause existed for warrantless search of car as eyewitness described suspects by name, and identified car as yellow Toyota station wagon with roof rack, dented side and loose front license plate). See also Commonwealth v. Gentile, 437 Mass. 569, 573-574 (2002) (probable cause existed for warrantless search of car when it was last known location of victim, and evidence of victim's disappearance might be contained therein). These cases are notable because the police had unique identifying factors tying the car or its occupants to the crime. By contrast, here the police had a basic description of the suspects' clothing and a broad description of the type of car (a newer model Chevrolet

5

Malibu or Impala), its color (black cherry metallic), and the lack of a front license plate.  More was needed as "probable cause must be based on particularized facts, not 'simply general conclusions.'"  Commonwealth v. Perry, 489 Mass. 436, 458 (2022), quoting Commonwealth v. Rosetti, 349 Mass. 626, 632 (1965).  When the car was seized, investigators did not have particularized facts to connect it to the shooting.

Because the police did not have "a timely nexus or connection between criminal activity" and the car seized by investigators, Dame, 473 Mass. at 537 (quotation omitted), the evidence derived from the seizure was also properly suppressed. See Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019).

Order allowing in part motion
  to suppress affirmed.

Order denying motion for
  reconsideration affirmed.

By the Court (Blake,
  Massing & Hand, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  November 17, 2023.

---

[2] The panelists are listed in order of seniority.