NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1322

COMMONWEALTH

vs.

JOHN MICHELIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, John Michelin, was indicted for murder in the first degree, G. L. c. 265, § 1, and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b).  After a jury trial in Superior Court, he was found guilty of the lesser included offense of involuntary manslaughter, G. L. c. 265, § 13.[1]  On appeal, the defendant claims that the motion judge should have suppressed evidence obtained as a result of the police's entry into the apartment and protective sweep, as well as statements made by the defendant at a police interview following his arrest.  The defendant also claims that the trial

_____

[1] A nolle prosequi entered on the charge of assault and battery by means of a dangerous weapon.

judge erred by failing to give a specific unanimity instruction and that the prosecutor made improper statements during closing arguments. We affirm.

Background. We summarize the facts as found by the motion judge. Just before midnight on Saturday, April 8, 2017, two Lynn police officers were dispatched to a multiunit apartment building in response to a 911 call. The caller, Richard Hilliard, was standing outside, and his finger was bleeding "from a significant cut." Hilliard, whom one of the officers knew was a resident of apartment two in the building's basement, told them that there had been a fight inside the apartment, that there were three or four people inside, and that they were involved in a gang. Hilliard said that one of the individuals in the apartment was armed with a baseball bat and that another had been "laid out." As one of the officers began to enter through an exterior door leading to a foyer in the building, he could hear at least two people grunt, one of them say, "Just leave him here, c'mon," and then a door close. After they entered the building's foyer, the officers saw a man lying next to the apartment door at the bottom of the stairs. The man was unconscious, a bloody T-shirt was pulled over his face, his pants were around his ankles, he had apparent anal trauma, and a

2

broom was lying next to him.  It appeared that his body had been dragged from apartment two.

After the officers knocked on the door of apartment two, a man answered and was handcuffed and removed from the apartment. The officers entered and conducted a protective sweep of the apartment.  They encountered a woman in the bathroom and the defendant on a bed in a bedroom, and placed both in handcuffs. They also saw several items in plain view, including a blood-covered rag or sheet, blood stains on the kitchen floor and counter, a large blood stain in the living room, a blood-stained guitar, and a blood-stained baseball bat.

With the foyer and the apartment secured by the police, medical personnel transported the victim to the hospital.  After reading the detained individuals their Miranda rights, the police posted a sentry at the apartment and prepared an application for a search warrant.  The police transported the defendant to the Lynn police station, where he provided a deoxyribonucleic acid (DNA) saliva sample and a recorded statement.  The victim died days later.

Discussion.  1.  Warrantless entry into the apartment.  The defendant contends that the motion judge erred in finding that the warrantless entry was justified by exigent circumstances and the emergency aid doctrine, and that all evidence discovered as

3

a result of the warrantless entry and protective sweep of the apartment should have been suppressed.  "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error" (citation omitted).  Commonwealth v. Daveiga, 489 Mass. 342, 346 (2022).  "We review independently the application of constitutional principles to the facts found" (citation omitted).  Id.

"A warrantless government search of a home is presumptively unreasonable under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights" (quotation and citation omitted).  Commonwealth v. Arias, 481 Mass. 604, 609 (2019).  "Warrantless searches may be justifiable, however, if the circumstances of the search fall within an established exception to the warrant requirement."  Commonwealth v. Tuschall, 476 Mass. 581, 584 (2017).

Assuming without deciding that the defendant had an expectation of privacy as a guest in the apartment, we agree with the motion judge that exigent circumstances justified the officers' warrantless entry.  "[T]wo conditions must be met in order for a nonconsensual entry to be valid under the exigent circumstances doctrine:  (1) there must be probable cause and (2) there must be exigent circumstances" (quotations omitted).  Arias, 481 Mass. at 615, quoting Commonwealth v. DeJesus, 439

4

Mass. 616, 619 (2003).  To satisfy the exigent circumstances prong, the police must have "reasonable grounds to believe that obtaining a warrant would be impracticable under the circumstances because the delay in doing so would pose a significant risk that the suspect may flee, evidence may be destroyed, or the safety of the police or others may be endangered."  Commonwealth v. Figueroa, 468 Mass. 204, 213 (2014).  "Whether exigent circumstances are found depends upon a consideration of the totality of the circumstances as they appeared to the officers at the time of entry."  Commonwealth v. Cataldo, 69 Mass. App. Ct. 465, 473 (2007).  In this case, the police had probable cause to believe that a serious crime of violence had occurred in the apartment.  Hilliard, himself bleeding, told the officers that there had been a fight inside the apartment and that one person had been "laid out" and another had a baseball bat.  After the officers gained entry to the building foyer, they found an unconscious man who had been brutalized and apparently dragged from the apartment.  These facts established not only probable cause to believe a crime had occurred, but also an objectively reasonable belief that others might still be in danger and those responsible for the violence might flee.  Moreover, the police had to secure the area to enable medical personnel to render aid to the victim.  Delaying

entry into the apartment in order to apply for a search warrant could have endangered others in the apartment, delayed aid to the victim, and allowed any perpetrators the time to destroy evidence, hide, or further arm themselves against a police entry.

For similar reasons, we agree that the warrantless entry was also justified under the emergency aid doctrine. "Under the emergency aid doctrine, the police 'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" Commonwealth v. Regan, 104 Mass. App. Ct. 623, 627 (2024), cert. denied, U.S. Supreme Ct., No. 24-6339 (Mar. 3, 2025), quoting Commonwealth v. Townsend, 453 Mass. 413, 425 (2009). "In determining whether entry is justified under the emergency aid exception, we look solely to the objective circumstances known to the police at the time of entry and determine whether those circumstances provide a reasonable basis for entry." Commonwealth v. Entwistle, 463 Mass. 205, 214 (2012), cert. denied, 568 U.S. 1129 (2013). "Because the purpose of police entry is not to investigate criminal activity, a showing of probable cause is not necessary to invoke the exception." Regan, supra at 628. Here, an injured witness told the officers that there had been a fight and someone was "laid out" in the apartment, and the officers

6

found another victim severely injured and unconscious outside the apartment.  Given these facts, the police had objectively reasonable grounds to believe that one or more persons inside the apartment were at risk of imminent harm or "in need of immediate assistance."  Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 329 (2015).[2]

2.  Invocation of right to counsel.  The defendant also maintains that the motion judge erred in finding that the defendant did not invoke his right to counsel and that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights.  We disagree.  During a custodial interrogation, "[i]f the accused indicates that he wishes to remain silent, 'the interrogation must cease.'  If he requests counsel, 'the interrogation must cease until an attorney is present.'"  Commonwealth v. Santos, 463 Mass. 273, 285 (2012), quoting Edwards v. Arizona, 451 U.S. 477, 481 (1981).  "The invocation of the right to counsel, however, must be unambiguous."  Commonwealth v. Miller, 486 Mass. 78, 88 (2020).  "'[I]f a

_____

[2] Because we conclude that the officers' warrantless entry into the apartment and protective sweep were justified under the exigent circumstances and emergency aid exceptions to the warrant requirement, we need not address the defendant's arguments that the seizure of his clothing and DNA saliva sample were fruits of the unlawful entry and search, or that the subsequently-obtained search warrant was invalid because it was based on observations made during the entry.

7

suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,' the police need not cease their questioning."  Id., quoting Davis v. United States, 512 U.S. 452, 459 (1994).

The police advised the defendant of his Miranda rights before transporting him to the police station.  See Miranda v. Arizona, 384 U.S. 436, 444-445 (1966).  At the station, a State police trooper and a Lynn police lieutenant interviewed the defendant for thirty-nine minutes.  At the outset, the trooper again advised the defendant of his Miranda rights and also advised him of the right to a prompt arraignment.  Regarding the prompt arraignment, the trooper read an advisory that stated, "At court a judge can appoint a lawyer for me if I cannot afford one.  At court a judge can decide to release me."  After the defendant expressed concerns about being late for work, the trooper responded that even if he posted bail overnight the defendant would have to appear in court on Monday morning.  The defendant asked, "So who's my lawyer?"  The trooper answered, "If you can't, we'll get to that, but right now, unless you have a lawyer already set up, you don't have one.  When you go to court, they'll appoint one."  The defendant responded, "Okay,"

8

and, after a further exchange about other matters, signed the Miranda waiver and waiver of prompt arraignment. We agree with the motion judge that, given the context in which the statement was made, the defendant did not unequivocally invoke his right to counsel when he asked, "So who's my lawyer?" Rather, the defendant was referring to the right to prompt arraignment and asking who would represent him in court on Monday morning. Nor are we persuaded by the defendant's argument that the trooper's statement that "you don't have" a lawyer precluded the defendant from knowingly, intelligently, and voluntarily waiving his Miranda rights. The trooper clearly explained to the defendant his rights to remain silent, speak to a lawyer before answering any questions, and stop the questioning at any time, and the defendant acknowledged his understanding of those rights at the interview and signed the Miranda waiver.

3. Specific unanimity instruction. The defendant contends that the trial judge erred by failing to give a specific unanimity instruction because the jury were presented with evidence of two distinct and separate acts that could have constituted the single count of murder: (1) the defendant holding up the victim while another man struck him with a baseball bat, and (2) the defendant's participation in the assault of the victim with the broomstick. Because trial

9

counsel did not request such an instruction or object to it not being given, we review to consider whether the error, if any, created a substantial risk of a miscarriage of justice. See Commonwealth v. Gaughan, 99 Mass. App. Ct. 74, 81 (2021).

There was no error. "[A] specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995), quoting Commonwealth v. Keevan, 400 Mass. 557, 566-567 (1987). Such instruction "is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged" (citation omitted). Commonwealth v. Ramos, 31 Mass. App. Ct. 362, 366-367 (1991). "Where the Commonwealth proceeds on a theory that the criminal act was 'a continuing course of conduct,' however, or 'a single criminal scheme or plan carried out consistently overtime [sic],' a specific unanimity instruction is not required" (citation omitted). Commonwealth v. Fan, 490 Mass. 433, 450 (2022). The murder charge brought by the Commonwealth was based on a series of acts committed in succession and in the same general area. Because those acts constituted a "continuing course of conduct," no specific unanimity instruction was required. See id; Commonwealth v. Cyr, 433 Mass. 617, 621-624 (2001).

10

4. _Closing argument_. Lastly, the defendant claims that the prosecutor made certain improper statements in his closing argument. While the Commonwealth suggests that the defendant did not properly object to all of these statements, we need not decide which standard of review applies to each statement, because none amounted to error when we consider them "in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Andre, 484 Mass. 403, 417-418 (2020), quoting Commonwealth v. Felder, 455 Mass. 359, 368 (2009). While the Commonwealth is allowed "to argue 'forcefully for the defendant's conviction,' closing arguments must be limited to facts in evidence and the fair inferences that may be drawn from those facts." Commonwealth v. Rutherford, 476 Mass. 639, 643 (2017), quoting Commonwealth v. Wilson, 427 Mass. 336, 350 (1998).

The defendant claims that there was no basis for the prosecutor's statement that the defendant used the guitar as a weapon against the victim. However, both a State trooper and a forensic scientist from the State police crime laboratory testified that the guitar seized from the apartment had a red-brown stain on it. The forensic scientist testified that the stain tested positive for human blood and there was a crack on the body of the guitar. Accordingly, it was fair to infer that

11

the guitar had been used as a weapon.  The defendant also argues that there was no evidence supporting the prosecutor's assertions that the "murder couldn't have happened with just one person," or that the defendant took part in the assault involving the use of the broomstick to injure the victim's rectum.  Again, we disagree.  The forensic scientist testified that there was a red-brown stain on the top of the broom handle that extended twelve inches down the broom, that the victim's DNA profile matched the DNA profile of the broom stain, and that a swab of the defendant's hands tested positive for the presence of blood.  Hilliard also testified that he saw the defendant hold the victim while another man hit him with a baseball bat, and one of the responding officers testified that he heard two people exerting themselves before the officers entered the building and found the unconscious victim lying with his pants around his ankles and apparent anal trauma.  Based on this evidence, it was reasonable for the prosecutor to draw the

inference during closing argument that the defendant participated in the assault involving the broomstick.

<u>Judgment affirmed</u>.

By the Court (Blake, C.J.,
Hodgens & Toone, JJ.[3]),

_Paul Little_

Clerk

Entered:  May 12, 2025.

---

[3] The panelists are listed in order of seniority.